# NO. 12-23-00258-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN THE INTEREST OF* | *§* | *APPEAL FROM THE* |
| *S. M. C. AND L. M. C., CHILDREN* | *§* | *COUNTY COURT AT LAW NO. 2* |
| | *§* | *ANGELINA COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

J.C. appeals the termination of her parental rights to the children S.M.C. and L.M.C. J.G. separately appeals the termination of his parental rights to the child L.M.C.  In one issue each, J.C. and J.G. challenge the sufficiency of the evidence.  We affirm.

## BACKGROUND

J.C. (hereafter Mother) is the mother of S.M.C. and L.M.C.[1] J.G. is the father of L.M.C. On May 20, 2022, the Department of Family and Protective Services (the Department) filed an original petition for the protection of S.M.C. and L.M.C., for conservatorship, and for termination of Mother and J.G.'s respective parental rights.  The Department was appointed temporary managing conservator of both children. J.P., J.G.'s mother and L.M.C.'s paternal grandmother, intervened in the case, seeking placement of L.M.C. with her, or appointment as L.M.C.'s possessory conservator.

At the conclusion of the trial on the merits, the Associate Judge found, by clear and convincing evidence, that Mother engaged in one or more of the acts or omissions necessary to support termination of her parental rights under subsections (D) and (E) of Texas Family Code Section 161.001(b)(1).  The Associate Judge also found that termination of the parent-child

---

[1] The purported father of S.M.C., N.L., did not participate in the case, and the court did not determine S.M.C.'s paternity.

1

relationship between Mother, S.M.C., and L.M.C. was in the children's best interest. Further, the Associate Judge found, by clear and convincing evidence, that J.G. engaged in one or more of the acts or omissions necessary to support termination of his parental rights under subsections (D), (E), and (N) of Texas Family Code Section 161.001(b)(1), and that termination of the parent-child relationship between J.G. and L.M.C. was in L.M.C.'s best interest. Based on these findings, the Associate Judge ordered that the parent-child relationship between Mother, S.M.C., and L.M.C. be terminated, and that the parent-child relationship between J.G. and L.M.C. be terminated. Finally, the Associate Judge found that placement of L.M.C. with J.P. was not in L.M.C.'s best interest.

J.P. appealed from the Associate Judge's decision and requested a de novo hearing, specifically challenging the finding that placement of L.M.C. with her was not in his best interest. After a de novo hearing, the presiding judge of the County Court at Law of Angelina County adopted the Associate Judge's report and ordered that the Associate Judge's order be adopted as an order of the court. This appeal followed.

## TERMINATION OF PARENTAL RIGHTS

Involuntary termination of parental rights involves fundamental constitutional rights. *Vela v. Marywood*, 17 S.W.3d 750, 759 (Tex. App.—Austin 2000), *pet. denied per curiam*, 53 S.W.3d 684 (Tex. 2001); *In re J.J.*, 911 S.W.2d 437, 439 (Tex. App.—Texarkana 1995, writ denied). Because a termination action permanently sunders the bonds between parent and child, the proceedings must be strictly scrutinized. *Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex. 1976); *In re Shaw*, 966 S.W.2d 174, 179 (Tex. App.—El Paso 1998, no pet.). "[W]e must exercise the utmost care in reviewing the termination of parental rights to be certain that the child's interests are best served and that the parent's rights are acknowledged and protected." *Vela*, 17 S.W.3d at 759.

Section 161.001(b) of the Texas Family Code permits a court to order termination of parental rights if two elements are established. TEX. FAM. CODE ANN. § 161.001(b) (West 2023). The movant must show that (1) the parent committed one or more predicate acts or omissions, and (2) termination is in the child's best interest. *See id.* § 161.001(b)(1), (2). Both elements must be established by clear and convincing evidence, and proof of one element does not

2

alleviate the petitioner's burden of proving the other. TEX. FAM. CODE ANN. § 161.001(b); *Wiley*, 543 S.W.2d at 352; *In re J.F.C.*, 96 S.W.3d at 256, 263-64 (Tex. 2002).

The "clear and convincing" evidentiary standard for termination of parental rights is both constitutionally and statutorily mandated. TEX. FAM. CODE ANN. § 161.001; *In re J.J.*, 911 S.W.2d at 439. "Clear and convincing evidence" is defined as "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2023). The party seeking termination of parental rights bears the burden of proof. *In re J.F.C.*, 96 S.W.3d at 263-64.

<u>STANDARD OF REVIEW</u>

Though they separately challenge different aspects of the trial court's findings, both J.C. and J.G. argue that the evidence was legally and factually insufficient to support the termination of their respective parental rights.

When presented with a challenge to both the legal and factual sufficiency of the evidence, an appellate court must first review the legal sufficiency of the evidence. *Glover v. Tex. Gen. Indem. Co.*, 619 S.W.2d 400, 401 (Tex. 1981); *In re M.D.S.*, 1 S.W.3d 190, 197 (Tex. App.—Amarillo 1999, no pet.). When reviewing the legal sufficiency of the evidence, we review all the evidence in the light most favorable to the finding to determine whether "a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d at 266. We assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could, and we disregard all evidence that a reasonable factfinder could have disbelieved or found incredible. *Id.* If no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, the evidence is legally insufficient. *Id.* The trier of fact is the exclusive judge of the credibility of the witnesses and the weight to be given their testimony. *Nordstrom v. Nordstrom*, 965 S.W.2d 575, 580 (Tex. App.—Houston [1st Dist.] 1997, pet. denied).

When reviewing the factual sufficiency of the evidence, we must determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the Department's allegations. *In re C.H.*, 89 S.W. 3d 17, 25 (Tex. 2002). We give due consideration to evidence that the factfinder could reasonably have found to be clear and

convincing, and we consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its ruling. ***In re J.F.C.***, 96 S.W.3d at 266. If, considering the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, the evidence is factually insufficient. ***Id.***

## TERMINATION UNDER § 161.001(B)(1)(D) AND (E)

J.C. argues that the evidence is legally and factually insufficient to support the trial court's predicate findings that her parental rights to S.M.C. and L.M.C. should be terminated pursuant to subsections (D) and (E) of Texas Family Code Section 161.001(b)(1).[2]

**Applicable Law**

The court may order termination of the parent-child relationship if the court finds by clear and convincing evidence that the parent has knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child. TEX. FAM. CODE ANN.§ 161.001(1)(D). Subsection (D) addresses the child's surroundings and environment. ***In re N.R.***, 101 S.W.3d 771, 775-76 (Tex. App.—Texarkana 2003, no pet.). The child's "environment" refers to the suitability of the child's living conditions as well as the conduct of parents or others in the home. ***In re S.R.***, 452 S.W.3d 351, 360 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). The relevant time frame to determine whether there is clear and convincing evidence of endangerment is before the child was removed. ***Ybarra v. Tex. Dep't of Human Servs.***, 869 S.W.2d 574, 577 (Tex. App.—Corpus Christi 1993, no pet.). Further, subsection (D) permits termination based upon only a single act or omission. ***In re R.D.***, 955 S.W.2d 364, 367 (Tex. App.—San Antonio 1997, pet. denied).

When seeking termination under subsection (D), the Department must show that the child's living conditions pose a real threat of injury or harm. ***In re N.R.***, 101 S.W.3d at 776; ***Ybarra***, 869 S.W.2d at 577. Further, there must be a connection between the conditions and the resulting danger to the child's emotional or physical well-being. ***Ybarra***, 869 S.W.2d at 577-78. It is sufficient that the parent was aware of the potential for danger to the child in such environment and disregarded that risk. ***In re N.R.***, 101 S.W.3d at 776. In other words, conduct

---

[2] J.C. does not dispute the trial court's finding that termination of her parental rights was in S.M.C.'s and L.M.C.'s best interest; therefore, that finding is binding on this Court, and we need not address it. *See **Interest of J.G.***, 592 S.W.3d 506, 507 (Tex. App.—Waco 2019, no pet.).

that demonstrates awareness of an endangering environment is sufficient to show endangerment. *Interest of M.D.M.*, 579 S.W.3d 744, 765 (Tex. App.—Houston [1st Dist.] 2019, no pet.).[3] We have previously concluded it is illogical to reason that inappropriate, debauching, unlawful, or unnatural conduct of persons who live in the home of a child, or with whom a child is compelled to associate on a regular basis in his home, is not inherently a part of the "conditions and surroundings" of that place or home. *In re B.R.*, 822 S.W.2d 103, 106 (Tex. App.—Tyler 1991, writ denied). Subsection (D) is designed to protect a child from precisely such an environment. *Id.*

Subsection (E) requires us to look at the parent's conduct alone, including actions, omissions, or the parent's failure to act. *In re D.J.*, 100 S.W.3d 658, 662 (Tex. App.—Dallas 2003, pet. denied); *In re D.M.*, 58 S.W.3d 802, 811 (Tex. App.—Fort Worth 2001, no pet.). Termination under subsection (E) must be based on more than a single act or omission. *In re D.M.*, 58 S.W.3d at 812; *In re D.T.*, 34 S.W.3d 625, 634 (Tex. App.—Fort Worth 2000, pet. denied). A voluntary, deliberate, and conscious "course of conduct" by the parent that endangers the child's physical and emotional wellbeing is required. *In re D.M.*, 58 S.W.3d at 812; *In re D.T.*, 34 S.W.3d at 634. Because the evidence pertaining to subsections (D) and (E) is interrelated, we conduct a consolidated review. *See In re T.N.S.*, 230 S.W.3d 434, 439 (Tex. App.—San Antonio 2007, no pet.).

As a general rule, conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child. *In re M.R.J.M.*, 280 S.W.3d 494, 503 (Tex. App.—Fort Worth 2009, no pet.); *In re R.W.*, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied). Endangering conduct is not limited to actions directed towards the child, but may include the parent's actions before the child's birth and while the parent had custody of older children. *Tex. Dep't of Human Svcs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *see also In re M.N.G.*, 147 S.W.3d 521, 536 (Tex. App.—Fort Worth 2004, pet. denied) (courts may look to parental conduct both before and after child's birth to determine whether termination is appropriate). Further, the conduct may occur both before and after the child has been removed by the Department. *Walker v. Tex. Dep't of Family & Protective Svcs.*, 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). It is further not necessary

---

[3] "Endanger" means to expose to loss or injury or to jeopardize. *Tex. Dep't of Human Svcs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *In re D.M.*, 58 S.W.3d 802, 811 (Tex. App.—Fort Worth 2001, no pet.).

that the endangering conduct causes the child to actually suffer injury. ***Boyd***, 727 S.W.2d at 533; ***In re J.J.***, 911 S.W.2d at 440. Domestic violence may be considered evidence of endangerment. ***In re C.J.O.***, 325 S.W.3d 261, 265 (Tex. App.—Eastland 2010, pet. denied). Evidence of illegal drug use or alcohol abuse by a parent is often cited as conduct which will support an affirmative finding that the parent has engaged in a course of conduct which has the effect of endangering the child. *See, e.g., **In re C.R.***, 263 S.W.3d 368, 371 (Tex. App.—Dallas 2008, no pet.); ***In re M.R.***, 243 S.W.3d 807, 818–19 (Tex. App.—Fort Worth 2007, no pet.); ***Toliver v. Tex. Dep't of Family & Protective Servs.***, 217 S.W.3d 85, 98 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

**Analysis**

Barrance Barlow, an investigator for the Department, testified that this case originated because the Department received reports of unsafe conditions at the children's home (at the time, Mother and the children lived in a camper), including lack of food, lack of running water, lack of power to the refrigerator, possible drug use, and possible domestic violence. Barlow visited the home and noticed a lot of power tools and blades outside of the camper, there was not much food available, and the inside of the camper was generally unclean and cluttered with trash. Barlow also learned of an occurrence of domestic violence wherein a man, who also lived in the camper, assaulted Mother in front of S.M.C. and L.M.C. Following the completion of Barlow's initial investigation, the children were removed from Mother's care and their case was assigned to Department caseworker Sierra Blangger, who testified that Mother continued to associate with the perpetrator of the previous domestic violence incident during this case. Domestic violence may be considered evidence of endangerment, even if the endangering acts were not directed at the child or did not cause actual injury to the child. ***Interest of G.M.***, 649 S.W.3d 801, 809 (Tex. App.—El Paso 2022, no pet.). Moreover, abusive or violent conduct by a resident of a child's home may produce an environment that endangers the physical or emotional well-being of a child. ***In re D.C.***, 128 S.W.3d 707, 715 (Tex. App.—Fort Worth 2004, no pet.).

Blangger further testified that L.M.C. exhibited severe hygiene and medical concerns, including an incident where an injury to his toe became infected. The failure to provide or obtain appropriate medical care for a child can constitute endangering conduct. *See **D.H. v. Texas Dep't of Fam. & Protective Servs.***, 652 S.W.3d 54, 60 (Tex. App.—Austin 2021, no pet.). This is true even if the parent did not cause the need for the medical treatment. ***Interest of J.D.G.***, 570 S.W.3d 839, 852 (Tex. App.—Houston [1st Dist.] 2018, pet. denied). S.M.C. has significant

mental health and behavioral struggles and is currently placed in a residential treatment facility in Arkansas where she receives constant supervision. Mother testified that S.M.C. is "ADHD, schizophrenic, and bipolar." Mother stated that S.M.C. was prescribed medication to manage these conditions when the Department was previously involved in 2017, but that she discontinued giving S.M.C. any medication in 2020. Blangger testified that at one virtual visit, Mother urged S.M.C. to tell her doctors that she refused to take her medications. A parent's failure or refusal to administer prescribed medication may support a finding of endangerment. *See, e.g.*, *In re R.L.*, No. 04-13-00226-CV, 2013 WL 5508381, at *6 (Tex. App.—San Antonio Oct. 2, 2013, no. pet.) (mem. op.) (parent withholding prescribed medication for ADHD and adjustment disorder supported finding of endangerment); *Interest of P.R.W.*, 493 S.W.3d 738, 746 (Tex. App.—Corpus Christi 2016, no pet.) (citing *In re D.W.*, 445 S.W.3d 913, 926 (Tex. App.—Dallas 2014, pet. denied) (failure to provide children prescribed medication for depression, anger issues, and ADHD endangered children's welfare and supported inference that conduct would recur if children were returned)).

Blangger provided a family plan of service to Mother and discussed same with her. The plan (which was subsequently made an order of the court) required Mother to complete a psychological evaluation, a psychosocial evaluation, a substance abuse evaluation, and parenting classes. Mother was further required to obtain and maintain a safe, stable living environment and a safe, stable form of transportation. However, Mother did not complete either the psychological or psychosocial evaluation, nor did the Department receive proof of Mother's completion of a parenting class. Blangger further testified that Mother did not obtain safe transportation and moved to different cities several times during the case, indicating a lack of a stable living environment. Mother claimed not to understand that the assessments and classes from previous cases did not carry over to this case.[4] A court may consider a parent's failure to complete a service plan as part of the endangering conduct analysis. *See Interest of S.A.*, 665 S.W.3d 59, 70 (Tex. App.—Tyler 2022, pet. denied) (citing *In re M.B.*, No. 02-15-00128-CV, 2015 WL 4380868, at *12 (Tex. App. —Fort Worth July 16, 2015, no pet.) (mem. op.)).

Mother testified that she was arrested twice since the removal of L.M.C. and S.M.C. from her care. The first arrest for aggravated theft of property took place in August 2022, wherein J.P.

---

[4] Barlow testified that he was aware of twelve previous Department investigations of Mother. In her subsequent testimony, Mother admitted that her children were previously removed from her care five times.

and her dating partner alleged that Mother stole $30,000.00 in personal property from them. Mother subsequently pleaded "guilty" to a lesser misdemeanor charge and was sentenced to time served, although she testified that she did not understand that she was under oath when making her plea and was actually innocent of the crime. The second arrest, for burglary of a building, occurred in April 2023. Mother was one of several individuals arrested, with one of the others being the perpetrator of the earlier domestic violence incident. Mother admitted to this arrest but claimed that the charge had been dismissed. Intentional criminal activity which exposes a parent to incarceration is relevant evidence tending to establish a course of conduct endangering the emotional and physical well-being of the child. *Interest of M.C.*, 482 S.W.3d 675, 685 (Tex. App.—Texarkana 2016, pet. denied); *see also Interest of J.F.-G.*, 612 S.W.3d 373, 383 (Tex. App.—Waco 2020), *aff'd*, 627 S.W.3d 304 (Tex. 2021).

During the pendency of the Department's investigation, both Barlow and Blangger testified that Mother refused to make herself available for drug testing on multiple occasions. Mother completed drug screening only twice, and one test was positive for marijuana. Blangger further stated that Mother disclosed to the Department in 2022 that she smokes marijuana daily, and afterward provided a forged prescription for medical marijuana. Mother testified that she recalled the trial court ordering her to stop using marijuana, but she continued to use it anyway, and believed the court stated she could keep using marijuana "as long as it had the medical stuff behind it." Mother claimed that she failed to submit to drug testing because she was not asked to do so and refused to submit to hair follicle testing because of a promise she made to her father about cutting her hair. However, the trial court could have found Mother's testimony not to be credible, and a factfinder may reasonably infer from a parent's refusal to complete scheduled drug screenings that the parent is avoiding screening because she is using drugs. *Interest of E.A.R.*, 672 S.W.3d 716, 723 (Tex. App.—San Antonio 2023, pet. denied) (citing *In re W.E.C.*, 110 S.W.3d 231, 239 (Tex. App.—Fort Worth 2003, no pet.)). A parent's use of narcotics and its effect on her ability to parent may qualify as an endangering course of conduct. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009); *see also In re R.W.*, 129 S.W.3d at 739. Further, evidence that the parent continued to use illegal drugs even though the parent knew her parental rights were in jeopardy is conduct showing a voluntary, deliberate, and conscious course of conduct, which, by its nature, endangers a child's well-being. *See Interest of S.A.*, 665 S.W.3d at 70; *In re M.E.-M.N.*, 342 S.W.3d 254, 263 (Tex. App.—Fort Worth 2011, pet. denied). Because it

exposes the child to the possibility that the parent may be impaired or imprisoned, illegal drug use may support termination under subsection (E). *Walker*, 312 S.W.3d at 617-18.

From the above evidence, a reasonable fact finder could have formed a firm belief or conviction that Mother housed S.M.C. and L.M.C. with a violent individual, failed to provide adequate medical care to one or both of the children, failed to complete numerous requirements of her service plan, engaged in voluntary criminal activity, and continued to use illegal drugs during this case. Therefore, we hold that the evidence, viewed in the light most favorable to the finding, was sufficiently clear and convincing that a reasonable trier of fact could have formed a firm belief or conviction that Mother knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endangered the physical or emotional well-being of the children, and engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the physical or emotional well-being of the children. *See In re J.F.C.*, 96 S.W.3d at 266.

Although Mother claimed that she no longer used marijuana, and further alleged that she was employed and secured a residence, Mother never presented a clean drug test, and never provided the Department with any proof of employment or information (other than a photograph) about her residence. This evidence is not so significant that a reasonable trier of fact could not have reconciled the evidence in favor of its finding and formed a firm belief or conviction that Mother knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endangered the physical or emotional well-being of the children, and engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the physical or emotional well-being of the children. *See In re C.H.*, 89 S.W.3d at 25. Therefore, we hold that the evidence is legally and factually sufficient to support termination of Mother's parental rights under subsections (D) and (E) of Texas Family Code Section 161.001(b). *See* TEX. R. APP. P. 47.1. We overrule Mother's sole issue.

## BEST INTEREST OF THE CHILD

J.G. argues that the evidence is legally and factually insufficient to support the trial court's finding that termination of his parental rights is in L.M.C.'s best interest.

**Applicable Law**

9

Trial courts have wide latitude in determining a child's best interest.  *Interest of I.N.B.*, 662 S.W.3d 631, 647 (Tex. App.—Beaumont 2023, no pet.).  In determining the best interest of the child, courts consider a non-exhaustive list of factors, including: (1) the desires of the child; (2) the child's emotional and physical needs now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) programs available to assist these individuals to promote the child's best interest; (6) plans for the child by these individuals or the agency seeking custody; (7) stability of the home or proposed placement; (8) acts or omissions of the parent which may indicate that the existing parent-child relationship is not proper; and (9) any excuse for the parent's acts or omissions.  *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976).

The Texas Family Code also provides a list of factors that we will consider in conjunction with the *Holley* factors.  TEX. FAM. CODE ANN. § 263.307(b) (West 2023).  These statutory factors include (1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the Department; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills; and (13) whether an adequate social support system consisting of an extended family and friends is available to the child. *Id.*

No particular *Holley* factor is controlling, and evidence of one factor may be sufficient to support a finding that termination is in the child's best interest.  *In re A.P.*, 184 S.W.3d 410, 414 (Tex. App.—Dallas 2006, no pet.).  The evidence need not prove all the statutory or *Holley*

factors to show that termination of parental rights is in a child's best interest. *See **Holley***, 544 S.W.2d at 372; ***In re J.I.T.P.***, 99 S.W.3d 841, 848 (Tex. App.—Houston [14th Dist.] 2003, no pet.). The best interest of the child does not require proof of any unique set of factors nor limit proof to any specific factors. ***In re D.M.***, 58 S.W.3d at 814. Evidence supporting the statutory predicate grounds for termination of parental rights is also probative in determining whether termination is in the child's best interest. *See **In re C.H.***, 89 S.W.3d at 28-29. In conducting a best-interest analysis, "a court may consider not only direct evidence but also may consider circumstantial evidence, subjective factors, and the totality of the evidence." ***In re J.M.T.***, 519 S.W.3d 258, 269 (Tex. App.—Houston [1st Dist.] 2017, pet. denied). We will apply the relevant statutory and ***Holley*** factors below.

## Analysis

J.G. testified that he was convicted of aggravated sexual assault of a four-year-old child and sentenced to forty years' imprisonment, although he maintained his innocence. He began serving his sentence on September 23, 2018 (when L.M.C. was less than one year old), remained incarcerated at the time of trial, and was unaware of when he would be eligible for parole. J.G. was also convicted of indecency with a child, for which he was sentenced to fifteen years' imprisonment. Before his incarceration, J.G. was unemployed and unable to support himself or secure housing. He testified that he met L.M.C. in person once, but did not know L.M.C. was his son, and has never cohabited with L.M.C. J.G. stated that he could not pay child support while incarcerated but was willing to do so when released. J.G. testified that he would like to retain his parental rights and desired L.M.C. to be placed with his mother, J.P., which he believed would be in the child's best interest.

Blangger testified that she created a service plan for J.G., which was subsequently made an order of the court, and mailed it to him. However, J.G. denied receiving the plan, and he admitted that he had not completed any courses while in prison other than attending Bible study. Regarding J.G.'s wish that L.M.C. be placed with J.P., Blangger stated that J.P. had a criminal history involving robbing a bank with her children in the car, which caused the removal of the children from her care, and that said children were never returned. J.P.'s home study was denied because of inconsistencies in the information she provided the Department, including conflicting statements regarding both her history of domestic violence and her past mental health issues (including suicide attempts). Further, L.M.C.'s visits with J.P. appeared to have a negative

impact on him; after the visits, he did not want to eat, had difficulty sleeping, and exhibited unruly behavior at school and at home. For these reasons, L.M.C.'s therapist recommended cessation of his visits with J.P. Therefore, Blangger stated, the Department's permanent plan for L.M.C. was adoption by his current foster family, with whom the child was doing well. Subsequently, J.P. admitted that she had three previous cases with the Department. She also testified that outside of the aforementioned felony charge, she had been charged with some misdemeanors, but all charges were dismissed because she accepted deferred adjudication.

Elvia Esteves-Garcia, the CASA advocate assigned to both children, testified that she previously visited L.M.C.'s foster home and that he was doing well with his foster family. Esteves-Garcia explained that L.M.C. has behavioral issues that require "significant attention" and effort, for which he was then participating in several therapies. She stated that L.M.C. could "be physical at times" due to the aforementioned behavioral problems and opined that adequately addressing his needs would necessitate more than one caregiver. Patrina Mitchell, Esteves-Garcia's supervisor, similarly testified that L.M.C. struggled with behavioral issues, including an incident wherein he bit someone. However, his foster family was trying their best to assist L.M.C. with his behavioral and emotional needs, including attending training for parents of children with similar issues, to learn how best to support L.M.C. Blangger testified L.M.C. was benefiting from the strategies his foster parents learned at this training, and was able to "remember what the rules are and follow directions," when he was unable to do so before. All of this evidence, combined with Blangger's statement that L.M.C.'s foster parents wished to adopt him, could have permitted the trial court to form a firm belief that the Department's proposed placement for L.M.C. was sufficiently stable.

The trial court may have considered J.G.'s failure to display adequate parenting skills or abilities and his failure to seek out any services or programs to improve those skills as a factor in this case. The evidence before the trial court showed that J.G. has never lived with L.M.C. and has met him only once, at a time when L.M.C. was less than one year old. J.G. testified to no further efforts to foster a relationship with L.M.C. since learning that L.M.C. is his son. Although J.G. denies ever receiving a service plan, the trial court was similarly free to disbelieve this testimony and credit Blangger's statement that she provided a service plan to J.G. In any case, J.G. never contacted the Department about the plan, and did not perform any of the requirements thereof.

The physical and emotional danger to L.M.C. is a prominent *Holley* factor the trial court may have considered in this case. Similarly, one of the statutory best-interest factors courts must consider is whether there is a history of abusive or assaultive conduct by the child's family. *In re G.M.G.*, 444 S.W.3d 46, 59 (Tex. App.—Houston [14th Dist.] 2014, no pet.). The evidence showed that J.G. has a history of criminal offenses against children and was convicted of and incarcerated for the sexual assault of a child approximately two years younger than L.M.C. Evidence that a parent sexually abused one child is a relevant consideration when a jury decides whether the parent poses a danger to the emotional and physical well-being of other children. *Interest of S.G.*, No. 01-18-00728-CV, 2019 WL 1448870, at *9 (Tex. App.—Houston [1st Dist.] Apr. 2, 2019, pet. denied) (mem. op.) (citing *In re R.W.*, 129 S.W.3d at 742). The past sexual abuse need not be directed at the parent's own child. *In re S.F.*, 141 S.W.3d 774, 777 (Tex. App.—Texarkana 2004, no pet.). Despite J.G.'s protestation that he is innocent, the trial court as factfinder was free to judge his credibility and choose not to believe his profession of innocence, and could have formed a firm conviction that permitting J.G. to retain his parental rights posed emotional and physical danger to L.M.C.

After reviewing the evidence and examining the statutory and *Holley* factors, we conclude that a reasonable trier of fact could have formed a firm belief or conviction that termination of J.G.'s parental rights was in the best interest of L.M.C. Although some evidence might weigh against the trial court's finding, such as the availability of J.P. as a potential caregiver, this evidence is not so significant that a reasonable fact finder could not have reconciled the evidence in favor of said finding. *See* TEX. FAM. CODE ANN. § 161.001(b)(2); *In re J.F.C.*, 96 S.W.3d at 266. Because the evidence is sufficient to support the trial court's best interest finding, we overrule J.G.'s sole issue.

## DISPOSITION

Having overruled J.C.'s sole issue and J.G.'s sole issue, we *affirm* the judgment of the trial court.

**GREG NEELEY**
Justice

Opinion delivered February 7, 2024.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

13



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**FEBRUARY 7, 2024**

**NO. 12-23-00258-CV**

**IN THE INTEREST OF S. M. C. AND L. M. C., CHILDREN**

Appeal from the County Court at Law No 2

of Angelina County, Texas (Tr.Ct.No. CV-00283-22-05)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*